**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| THOMAS MERRIFIELD, | : | Case No. 1:17-CV-10679 |
| | : | |
| Plaintiff, | : | JUDGE RYA W. ZOBEL |
| | : | |
| vs. | : | |
| | : | **PLAINTIFF'S JOINT OPPOSITION** |
| ROBERT GUSSMAN, et al. | : | **TO (1) DEFENDANT TRACEY** |
| | : | **VALENTINE-GUSSMAN'S JOINDER** |
| Defendants. | : | **IN DEFENDANT ROBERT** |
| | : | **GUSSMAN'S MOTION FOR** |
| | : | **PROTECTIVE ORDER AND MOTION** |
| | : | **FOR FURTHER PROTECTIVE** |
| | : | **ORDER; AND (2) DEFENDANT** |
| | : | **ROBERT GUSSMAN'S CROSS-** |
| | : | **JOINDER IN DEFENDANT TRACEY** |
| | : | **VALENTINE-GUSSMAN'S MOTION** |
| | : | **FOR FURTHER PROTECTIVE** |
| | : | **ORDER** |

**I.   Introduction**

Plaintiff Thomas Merrifield ("Mr. Merrifield") submits this joint Opposition to (1) Defendant Tracey Valentine-Gussman's ("Tracey") Joinder in Defendant Robert Gussman's ("Gussman") Motion for Protective Order Concerning Subpoenas *Duces Tecum* to Dennis F. Spurling, P.C. and Naffah & Company, PC and Motion for Further Protective Order; and (2) Gussman's Cross-Joinder in Tracey's Motion for Further Protective Order.  (Doc. Nos. 60-61).

As set forth in Mr. Merrifield's Opposition to Gussman's previously-filed Motion for Protective Order,[1] Defendants do not want to provide any information in this lawsuit, but at the same time prevent Mr. Merrifield from proving the conspiracy to seriously injure or kill him.  Mr. Merrifield must be given the opportunity to gather the

---

[1] Mr. Merrifield incorporates the arguments set forth in his Opposition to Gussman's Motion for Protective Order Concerning Subpoenas *Duces Tecum* to Dennis M. Spurling, P.C. and Naffah & Company, PC.  (*See* Doc. Nos. 59, 71).

evidence he needs to establish his claims, including evidence that may answer the crucial question of when Gussman's conspiracy was first conceived.

The subpoenas *duces tecum* that Mr. Merrifield's counsel issued for phone and financial records from 2011 to the present are both necessary and proper. This information will help establish the relationships between Defendants, and how those relationships changed after Mr. Merrifield resigned from BGI (Gussman's company) in February 2012. (Doc. No. 1 at ¶ 37). At least by that point, Gussman wanted to ruin Mr. Merrifield financially and professionally, and it became his goal "to make Mr. Merrifield miserable." (*See id.* at ¶ 5; Doc. No. 1-1 at 6).

Gussman and Tracey also claim that *none* of their text messages are discoverable in this case. Mr. Merrifield is not seeking any protected attorney-client communications. He simply wants access, via third-parties, to what he would have been entitled had Defendants not pled the Fifth Amendment – all text messages relevant to the claims and defenses in this case. Given Gussman's and Tracey's claim that their cell phone providers are prohibited from producing text messages under the Stored Communications Act, this Court should order Defendants to consent to the disclosure of that information.

For these reasons, and those set forth in more detail below, Defendants have not established good cause for the protective orders they seek. Their Motions should be denied.

## II. Argument

Under Fed. R. Civ. P. 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case." Of course, Rule 26 is liberally construed to permit broad

2

discovery. *See Halperin v. Berlandi*, 114 F.R.D. 8, 11 (D. Mass. 1986). Accordingly, as "the party seeking a protective order, defendant bears the burden of proving good cause" for such. *Multi-Core, Inc. v. Southern Water Treatment Co.*, 139 F.R.D. 262, 263 (D. Mass. 1991), citing *Anderson v. Cryovac, Inc.*, 805 F.2d 1 (1st Cir. 1986).

There is no good cause here. Defendants' telephone and financial records, as well as the records of the corporate and trust entities with which they are affiliated, are relevant and discoverable in this case.

### A. Tracey's Tax Returns Are Relevant and Discoverable.

Tracey joined Gussman's Motion for Protective Order regarding Mr. Merrifield's subpoenas for tax returns to Mr. Spurling and Mr. Naffah. (Doc. No. 60 at 1). Defendants contend that payments from Gussman to Tracey prove nothing because Tracey "was a home health aide" for Trudi Gussman. (Doc. No. 59 at 4). Mr. Merrifield's counsel would certainly like the opportunity to question Gussman and Tracey on the "home health services" that were being provided. But neither will provide any information, citing their Fifth Amendment privilege.

Mr. Merrifield should be permitted to examine how the income Tracey received from the Gussmans (which, according to bank records Mr. Merrifield obtained, dates back to at least 2012) was recorded for tax purposes. Perhaps Defendants' tax returns, bank statements, and other financial information would explain why Gussman continued to compensate Tracey for providing "home health" services even ***after*** Trudi died in June 2014. Or maybe they would help explain how Tracey – who, as far as Mr. Merrifield can tell, is not licensed as any kind of nurse with the Commonwealth of Massachusetts – went from employment at Icon Salon in Newton Centre, Massachusetts to caring for a patient with a terminal disease.

3

Clearly, Mr. Merrifield is entitled discover why Gussman was paying Tracey, when exactly the payments started, and whether Tracey was compensated in any manner other than cash. For these reasons, and those set forth in Mr. Merrifield's Opposition to Gussman's previously-filed Motion for Protective Order, Tracey's tax returns, as well as any corporate and trust entities with which she is affiliated, are relevant and discoverable on issues of liability and damages.

**B.  The Six-Year Timeframe For Telephone And Financial Records Is Necessary And Proper.**

Gussman and Tracey argue that Mr. Merrifield's subpoenas should be limited to January 1, 2014 to December 31, 2014 because "[t]he injuries to plaintiff allegedly occurred on August 15, 2014 and the defendants' alleged acts leading up to the injuries purportedly occurred in the 28-day period prior to that date." (Doc. No. 60 at 3; *see also* Doc. No. 61 at 1). Defendants claim that "[p]hone and financial records outside of that time frame are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence relating to plaintiff's allegations." (Doc. No. 60 at 3). Mr. Merrifield's claims are not nearly as limited as Defendants suggest.

In his Verified Complaint, Mr. Merrifield described how his relationship with Gussman went south in 2012 when he resigned from BGI. (Doc. No. 1 at ¶ 5). Gussman sued Mr. Merrifield and wanted to ruin him financially and professionally. (*See id.*). Gussman blamed him for the failed sale of BGI in 2011 and for the deterioration of Trudi's medical condition. (*See id.* at ¶¶ 36, 39). Even the Assistant District Attorney in Georgia recognized that Gussman's goal was to "go on in life to make Mr. Merrifield miserable." (Doc. No. 1-1 at 6). Defendants have not provided a shred of evidence to rebut these facts.

4

Similar to his vendetta against Mr. Merrifield, Gussman's relationship with Tracey dates back years before January 1, 2014 too. Although he pled the Fifth, Gussman discounts the significance of payments made to Tracey because she "was a home health aide" for Trudi. (Doc. No. 59 at 4). Yet, in 2012 and 2013, Tracey was somehow providing "home health" services at the same time she was employed by Icon Salon.

Moreover, Trudi "developed a pulmonary emboli in [November 2010], and was unable to come to work for a considerable period of time[,]" according to Gussman himself. (*See* May 5, 2013 Declaration of Robert Gussman, attached hereto as Exhibit A, at ¶ 4). But the transactions from one of Gussman's bank accounts do not appear to show payments to Tracey until 2012, two years after Trudi's onset and around the same time Gussman sued Mr. Merrifield in this Court. How Gussman chose a hair-stylist with no apparent medical training or background to care for Trudi's "progressive life threatening disease . . ." is also a mystery. (*See id.*).

Tracey's relationship with Defendants Anthony Dearth ("Dearth") and Matthew Reardon ("Reardon") also predated the attack on Mr. Merrifield by years. Tracey, Dearth, and Reardon had all known each other since 2011. (Doc. No. 1-1 at 11-15). Dearth and Tracey had been romantically involved, and Dearth had been to Gussman's home "a couple of times" to "[p]ick money off [sic], drop things off, things like that" when Tracey was caring for Trudi. (*See id.* at 15, 17-18).

According to Dearth, Reardon asked him to take part in Gussman's conspiracy in July 2014. (Doc. No. 1-1 at 22-23). But that doesn't mean that the plan to attack Mr. Merrifield was hatched then. Tracey and Gussman knew each other since at least 2012. Tracey was paid by Gussman in 2012, 2013, and 2014, and even after Trudi died. All the

5

while, Tracey, Dearth, Reardon, and Gina Valentine (Tracey's sister and Reardon's ex-wife) were friends who visited Gussman's home. (*See id*. at 14, 17-18).

Further, Reardon and Dearth were hired to attack Mr. Merrifield because of "financial issues" Gussman had with Mr. Merrifield. (Doc. No. 1-1 at 29-30). Whatever those "financial issues" were, they arose before 2014. Mr. Merrifield had no relationship of any kind with Gussman after BGI dismissed its lawsuit against him in the summer of 2013.

Telephone and financial records from 2011 to the present will provide at least some of the information that Defendants will not. Those records will not only show the actual transactions (i.e. a call, text, or payment from one Defendant to the other), but also where those transactions took place (i.e. where one Defendant was when he or she called, texted, or withdrew or deposited money).

The records may further explain the nature and extent of Gussman's and Tracey's relationship with each other, and their relationships with Dearth and Reardon. They could further corroborate what Dearth told investigators in Georgia. Or they may shed light on when Gussman first conceived his plan to retaliate against Mr. Merrifield.

Records after 2014 are equally important. Gussman, Tracey, or a corporate or trust entity with which they are affiliated may have compensated Reardon in 2015, 2016, or this year. Reardon may have been paid in cash, or Gussman and Tracey may have purchased him a vehicle or other property. Gussman could also be paying for Reardon's legal fees now as compensation for Reardon's role in the conspiracy. Gussman has a history of doing just that. Reardon told Dearth that a "fancy attorney" paid for by "Tracey's boyfriend" (Gussman) had gotten his (Reardon's) criminal charges dismissed or "reduced to something really minor . . ." (*See id*. at 66-67).

Plus, Dearth was not indicted until December 2015, and he did not plead guilty until February 2017. Any exchange of money and any communications between Defendants after 2014 would certainly be relevant to Mr. Merrifield's claims, particularly if they occurred after Dearth was charged or sentenced in Georgia.

In the end, Gussman and Tracey pled the Fifth Amendment on virtually every allegation against them, but then want to force Mr. Merrifield to accept as fact the claims they make through their attorneys. While Defendants cannot be compelled to incriminate themselves, they should not be permitted to dictate what discovery Mr. Merrifield needs to do.

### C. Defendants' Text Messages Are Discoverable.

Defendants argue that the contents of their text messages are not discoverable under the Stored Communications Act. (Doc. Nos. 60-61). Gussman also claims that all text messages should be off limits because he and his attorney communicated by text in the past. (Doc. No. 61).

Mr. Merrifield is not seeking any protected attorney-client communications. He never has. And no telephone provider has produced the substance of any text message to date. If they did, Mr. Merrifield's counsel agreed that they would not review the messages before consulting with Gussman's and Tracey's counsel.

Regardless, had they not pled the Fifth, Defendants would have been required to produce all relevant text messages in discovery. They would have been required to identify their phone numbers (Dearth had three numbers for Reardon). (Doc. No. 1-1 at 68). But they won't provide any of that information now, and they object to Mr. Merrifield trying to obtain it from third-parties.

7

Mr. Merrifield should not be precluded from discovering the substance of text messages relevant to the claims at issue in this case. Thus, he requests that the Court order Defendants to give consent to their cell phone providers so that all relevant text messages may be obtained. *See Romano v. Steelcase, Inc.*, 30 Misc. 3d 426, 907 N.Y.S. 2d 650 (NY Sup. Ct. 2010) (granting order requiring plaintiff to give consent to allow opposing party to obtain information allegedly covered by the Stored Communications Act); *see also Flagg v. City of Detroit*, 252 F.R.D. 346 (E.D. Mich. 2008) (finding the Stored Communications Act does not preclude civil discovery of a party's text messages that are maintained by a non-party service provider, but remain within the party's control.).

Defendants themselves will not be ordered to produce any documents or information. So there will not be any infringement of their Fifth Amendment rights.

## III. Conclusion

Mr. Merrifield's third-party subpoenas for telephone and financial records are necessary and proper, and they seek information relevant to the claims and defenses at issue in this case. Accordingly, this Court should deny the Motions for Protective Order filed by Defendants Robert Gussman and Tracey-Valentine Gussman.

Respectfully submitted,

s/ Mark G. Arnzen, Jr.
Brian S. Sullivan (*pro hac vice*)
Mark G. Arnzen, Jr. (*pro hac vice*)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio  45202
513-977-8200 - Phone
513-977-8141 – Fax
Brian.sullivan@dinsmore.com
Mark.arnzen@dinsmore.com

And

David C. McBride
19 Cherry Street
Danvers, Massachusetts 01923
Phone:		978-777-7733
Fax:		978-777-3940
Email:		dcmlawyer@aol.com

**Attorneys for Plaintiff Thomas Merrifield**

### CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2017, I filed this document through the CM/ECF system, which will cause a copy to be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and that paper copies will be mailed to the non-registered participants below.

**Via Regular U.S. Mail:**
Mr. Anthony C. Dearth
Johnson State Prison
290 Donovan-Harrison Road
Wrightsville, GA 31096

s/Mark G. Arnzen, Jr.