UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10679-RWZ

THOMAS MERRIFIELD

v.

ROBERT GUSSMAN, *et al.*

ORDER

November 6, 2017

ZOBEL, S.D.J.

Pending before me are a number of outstanding discovery motions (Docket ## 28, 59, 60, 61, 72, 87, 135, and 147). In essence, plaintiff seeks to discover information from 2011 to the present and to attach additional assessments up to $5,000,000. Defendants contend that discovery should be limited to 2014 and separately move for protective orders concerning various subpoenas duces tecum.

I. Analysis

A. Attachment of Additional Assets

One day after this case was filed, plaintiff filed an ex-parte motion for prejudgment attachment. Docket # 7. On May 5, 2017, "[i]n light of the facts alleged in his Verified Complaint, and further stated in his motion," I allowed plaintiff's ex-parte motion for prejudgment attachment "in an amount of no more than $1.3 million."[1]

---

[1] I now clarify and amend my earlier order, consistent with Massachusetts Rule of Civil Procedure 4.1, and state that plaintiff has shown that there is a reasonable likelihood that he will recover judgment in an amount equal to or greater than $1.3 million. See Mass. R. Civ. P. 4.1.

Docket # 10.  Plaintiff subsequently moved to attach additional assets because he maintains that "he is reasonably likely to recover a judgment against Defendants in excess of $5 million."  Docket # 28, at 3.  I ordered plaintiff to submit supplemental evidence in support of his claim, and "to provide specific amounts of tangible losses, such as medical bills, cost of services occasioned by and required as a result of defendants' conduct, and loss of income."  Docket # 93.  Plaintiff provided an itemized list of his medical expenses as of August 15, 2014, which totaled $368,425.47.[2]  Defendant Gussman contends that "the medical bills causally connected to the assault total approximately $52,000," Docket # 150, at 5, and denotes these expenses.  See Docket # 150-1.  Even accepting plaintiff's expenses in full, he has not shown there is a reasonable likelihood that he would recover judgment in an amount equal to or greater than the amount of $5 million.  Accordingly, I decline to allow attachment of additional assets.

      B.     **Discovery Time Period**

Plaintiff argues that discovery from 2011 through the present is necessary to demonstrate that the alleged conspiracy "was hatched long before 2013, and continued long after Mr. Merrifield was attacked," on August 15, 2014.  Docket # 147, at 2.  I disagree.  The discovery shall be limited to the period of January 1, 2014 through August 31, 2015.

---

[2] Plaintiff also argues that defendants "want to continue to move millions of dollars from one location to the next, with the hope that when judgment day comes, everything besides Gussman's condo will be gone," Docket # 145, at 10.  In support, plaintiff notes that "[b]ank records show transfers of millions of dollars in 2015 alone, to multiple accounts at multiple banks, including several trusts believed to be controlled by Gussman."  Id. at 7.  But this argument is not persuasive as defendant's alleged transfer of monies occurred nearly two years prior to plaintiff filing this complaint and seeking attachment of assets.

Plaintiff's claims against defendants are centrally based on the following allegations, all of which occurred in 2014:

- "Gussman concocted a plan to hire a hit-man to attack and seriously injure or kill Mr. Merrifield." Docket # 1 ("Verified Complaint"), at ¶ 44;
- "Gussman met with Tracey Valentine, and Reardon. They agreed with Gussman's plan to hire a hit-man to attack Mr. Merrifield at his home in Douglasville, Georgia." Id. at ¶ 45;
- "[In late July 2014,] Dearth was in Florida when Reardon called to discuss Gussman's plan." Id. at ¶ 49;
- "Dearth wanted the money, so he agreed to the job and flew back to Boston. Reardon picked him up at the airport in the rental car they would later drive from Massachusetts to Georgia to carry out Gussman's plan for revenge." Id. at ¶ 52;
- "On August 13, [2014,] Reardon and Dearth began their trip from Boston to Atlanta." Id. at ¶ 60;
- On August 15, 2014, Dearth attacked plaintiff at his home in Georgia, while Reardon sat in the car. Id. at ¶¶ 70–76;
- "Reardon called Tracey Valentine to let her know the job was done. Reardon always updated her because she was with Gussman." Id. at ¶ 77; and,
- "Upon information and belief, Gussman and Tracey Valentine paid for Reardon's and Dearth's travel expenses, the rental car, and the hotel they stayed at in Atlanta." Id. at ¶ 55.

Accordingly, I find that the burden of extending the discovery back to 2011 or past August 31, 2015 is not proportional to the needs of the case or necessary for plaintiff to establish his liability and damages claims.[3]

### C. Defendants' Motions for Protective Orders

#### 1. Tax Returns

Relatedly, defendants Gussman and Valentine-Gussman move for a protective order concerning subpoenas plaintiff served on Dennis M. Spurling, P.C. and Naffah & Company, PC that seek defendants' state and federal tax returns from 2011 to the present. Defendants argue these requests are "unduly burdensome, oppressive, harassing, and not reasonably related to the claims or defenses in this action," Docket # 59, at 3. Plaintiff counters that the tax returns relating to Gussman, Valentine-Gussman, and the corporate and trust entities they are affiliated with are relevant to liability and damages. Specifically, he argues that the tax returns may provide evidence in support of his claim of civil conspiracy because such information "may evidence the relationship and any transactions between them and their co-conspirators, Reardon and Dearth." Docket # 71, at 3. Separately, plaintiff argues that the tax returns are independently relevant to damages as "evidence of Gussman and Valentine-Gussman's financial condition." Id. at 6. Consistent with my ruling above, defendants'

---

[3] This does not, however, preclude plaintiff from presenting evidence at trial establishing the relationship between plaintiff and Gussman, and to provide context for plaintiff's allegation that the alleged animosity between Gussman and plaintiff began to brew as early as 2011. In any event, based on memoranda filed with the court, plaintiff appears to already have collected discovery from 2011 through 2014, see e.g., Docket # 147, at 3–9, and from 2014 through April 2017, see id. at 18–19. Further, to the extent that plaintiff contends that defendants' current financial information is relevant to the issue of damages, I will instruct the jury not to consider such information when determining punitive damages, if any.

4

motion is allowed to the extent that plaintiff is permitted to discover such information from January 1, 2014 through August 31, 2015.

## 2. Telephone Records and Financial Information

Defendants Gussman, Valentine-Gussman, and Reardon further move for a protective order concerning subpoenas plaintiff served on various cell phone providers and financial institutions "to the extent such subpoenas seek records before or after the period of January 1, 2014 to December 31, 2014." Docket # 61, at 1; see Dockets # 72, 87. Plaintiff is permitted to discover financial information from January 1, 2014 through August 31, 2015. With respect to information sought from cell phone providers, the court refrains at this time from issuing a protective order as the relevant statutes sufficiently set forth the limitations of discovery from entities providing electronic communication services and cable providers, and plaintiff's ability to seek such information without defendants' consent. See 18 U.S.C. § 2702; 47 U.S.C. § 551.

Relatedly, plaintiff seeks an order authorizing Comcast to produce documents of landline telephone records for Gussman's residence located 287 Langley Road, Unit 19, Newton, MA 02459. Defendant has not filed any opposition to this motion, and plaintiff represents that Gussman "does not oppose this request as it relates to his 2014 records." Docket # 135, at 2.[4] However, I find no authority under the Cable Communications Policy Act to issue such an order. Plaintiff argues that under the Act, a "cable operator may disclose such information if the disclosure is . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by

---

[4] Certainly if defendant Gussman consents to such disclosure, he may provide written or electronic consent to the subscriber to allow Comcast to provide records from 2014 to plaintiff. See 47 U.S.C. § 551(c).

the person to whom the order is directed." Id. at 3 (citing 47 U.S.C. § 551(c)(2)(B)). Importantly, plaintiff omits the clause prior to that quoted language, which states that the disclosure is "subject to subsection (h) of [47 U.S.C. § 551]," 47 U.S.C. § 551(c)(2)(B). Subsection (h), similar to the Stored Communications Act, provides that a court may order such disclosure by a third-party cable operator if it is in response to a request from a "governmental entity," 47 U.S.C. § 551(h). There is no mention or allowance, however, under the Cable Communications Policy Act for a court to issue disclosure in response to a civil subpoena. Accordingly, plaintiff's motion is denied.

### 3. Cell Phone Carriers

Defendants move for a protective order precluding cell phone carriers from disclosing the contents of any and all stored text messages. As explained above, there is no need for the court to issue such an order because the Stored Communications Act prohibits these entities from producing defendants' text messages. See 18 U.S.C. § 2702(a). Plaintiff concedes as much, see Docket # 81, at 2, and instead, asks the court to order defendants to consent to the disclosure of that information. Defendants have asserted their Fifth Amendment right against self-incrimination. Plaintiff has not identified any cases where the court ordered the production of electronically stored information belonging to defendants who have asserted their Fifth Amendment right. The court finds no authority to issue such an order and declines to do so at this time. Thus, to the extent that defendants refuse to produce cell phone or telephone records themselves in accordance with Federal Rule of Civil Procedure 34 because they have asserted their Fifth Amendment right, and to the extent they refuse to provide consent to the subpoenaed third-parties to release such information, the plaintiff may have no

6

recourse. Although these documents may be "crucial to showing Defendants' conspiracy to injure or kill Mr. Merrifield," Docket # 135, at 4, as plaintiff's counsel has noted, plaintiff may ask the jury to draw adverse inferences from defendants' assertion of the privilege. See Iantosca v. Benistar Administrative Serv., Inc, 567 Fed. App'x 1, 6 (1st Cir. 2014) (finding that it was "sound law" for the district court to instruct a jury that they could draw adverse inference against civil defendant who asserted the Fifth Amendment).

II.  **Conclusion**

1. Plaintiff's Motion for Attachment of Additional Assets, Request to Conduct Discovery and Request for an Evidentiary Hearing (Docket # 28) is ALLOWED IN PART and DENIED IN PART. No additional assets may be attached. Discovery shall be limited to the time period between January 1, 2014 through August 31, 2015.

2. Defendant Robert Gussman's Motion for Protective Order Concerning Subpoena Duces Tecum to Dennis M. Spurling, P.C. and Naffah & Company, PC (Docket # 59); Defendant Tracey Valentine-Gussman's Joinder and Motion for Further Protective Order (Docket # 60); and Defendant Robert Gussman's Cross-Joinder in Defendant Tracey Valentine-Gussman's Motion for Further Protective Order (Docket # 61) are ALLOWED IN PART and DENIED IN PART. Discovery shall be limited to the time period between January 1, 2014 through August 31, 2015.

3. Defendant Robert Gussman's Second Motion for Protective Order (Docket

4. # 72) is ALLOWED IN PART and DENIED IN PART. Discovery shall be limited to the time period between January 1, 2014 through August 31, 2015.

4. Defendant Matthew Reardon's Motion for Protective Order Concerning Subpoena Duces Tecum (Docket # 87) is ALLOWED IN PART and DENIED IN PART. Discovery shall be limited to the time period between January 1, 2014 through August 31, 2015.

5. Plaintiff Thomas Merrifield's Motion for Order Authorizing Comcast Phone of Massachusetts, Inc. To Produce Records Pursuant to 47 U.S.C. § 551(c)(2)(B) (Docket # 135) is DENIED.

6. Plaintiff Thomas Merrifield's Supplemental Motion on Defendants' Pending Motions for Protective Orders (Docket # 147) is ALLOWED IN PARTand DENIED IN PART. Discovery shall be limited to the time period between January 1, 2014 through August 31, 2015.

|  |  |
|---|---|
|   November 6, 2017 |   /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |